IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br>vs.<br><br>DARRIS GIBSON MOODY,<br><br>*Defendant.* | DOCKET NO. 1:22 CR 72<br><br>**DEFENDANT'S POSITION RE: SENTENCING; EXHIBITS** |

Darris Gibson Moody ("Mrs. Moody"), by and through her counsel of record, Emily M. Jones, hereby submits her position regarding sentencing factors. Mrs. Moody's sentencing position is based on the attached sentencing memorandum, exhibits, and any further evidence and argument that may be presented by sentencing.

   Respectfully submitted:

s/ Emily M. Jones
Emily M. Jones
N.C. Bar No. 35720
Assistant Federal Public Defender
Attorney for Darris Gibson Moody
Federal Public Defender for the Western District of North Carolina
1 Page Avenue, Suite 210
Asheville, NC  28801
Phone: (828) 232-9992
Fax: (828) 232-5575
emily_m_jones@fd.org

Date:  August 17, 2023

1

# I.
# INTRODUCTION/PROCEDURAL BACKGROUND[1]

There is so much more to Mrs. Moody than this crime.

She is a pianist at her church—



She is a mother—



---

[1] The facts in this section are based on the discovery, the Court file, and defense counsel's investigation in this case, unless otherwise noted.

And now, she is a grandmother—



The petite 57-year-old was the last person you would expect to be involved in this offense. She has been married to her husband for 34 years. She has spent her entire life in the same town in the Western District of North Carolina. She had a long career doing land surveying and appraising, in her family business with her father.



3

She grew up singing and playing music in the church. This interest became more than a hobby, as she participated in two musical groups with her father, making a record and several CDs.

But a number of factors came together here, to contribute to her committing this crime. Struggling with anxiety and depression and in a vulnerable place in her life during the pandemic, she went down a social media rabbit-hole that wound up being incredibly destructive to her life. Unfortunately, when COVID restrictions went into place in 2020, it divided the church where Mrs. Moody had been a member for over 12 years, and where she worked playing music. Some of the congregation refused to wear masks, and some wanted to continue to meet inside the sanctuary, while others felt the need to follow guidance they interpreted from the CDC. The conflict split the congregation and caused disruption. Eventually, Mrs. Moody and her husband decided to find a new congregation and they joined another nearby church, where she had been the backup pianist.

Additionally at this time, Mrs. Moody and her husband experienced financial difficulties including paying off loans. She broke her foot and had to have surgery, and had to let another church member take over as pianist while she recovered. She also stopped working at the family business at this time. And her mother sold the building that housed the family business. Suddenly, Mrs. Moody began to feel like all the stable, grounding forces in her life were slipping away. She began a downward spiral after this.

She had relied on her church community and family to provide her with the socialization she needed. But when COVID restrictions limited her ability to go to church and even limited some interaction with family, she spent more time on the internet connecting with others. The less time she had with personal interactions increased the anxiety and depression from which she suffered. Ultimately, leaving her church and quitting work negatively impacted Mrs. Moody; she felt a sense of loss and was looking for connection with others.

In the winter of 2021 and early 2022, Mrs. Moody was introduced to Telegram, an instant messaging and video service where she watched Christian news programs. It was on Telegram that she learned about an event taking place in Gettysburg, which she attended with her husband. Mrs. Moody was particularly moved by a speaker there, who spoke about her experience being trafficked. After the event, Mrs. Moody continued to connect with individuals on Telegram, which eventually led to her getting involved with the People's Bureau of Investigation (PBI).

When Mrs. Moody joined the PBI, they told her what to do and gave her a sense of purpose. In return, she shared her gospel songs with the other members who praised her singing. She did not meet them in person. The group's apparent focus on fighting child trafficking and trying to secure safe drinking water resonated with Mrs. Moody, as she had worked with children and on the betterment of her community in her church.

Mrs. Moody went on to send the writs in this case, using documents and guidance from the PBI website. The website and its leaders instructed Mrs. Moody

5

that if the victims signed the documents, they could resolve the issues raised in the writs. She naively followed their guidance, going on to send numerous writs, in a short period of time.

Her actions shocked her friends and family, because they were so inconsistent with the person they thought they knew. As they tell the Court,

- "To say that I was shocked upon hearing of her recent actions would be an understatement." (Ex. A at 1),

- "Everyone I talk to cannot believe this is actually (sic) happening to her of all people…She is my opinion the picture of a true American Christain (sic) lady and mom." (Ex. A at 2), and

- "I am not sure what happened to Darris that took her down this road. I as well as other friends are still in shock." (Ex. A at 7).[2]

Ultimately, Ms. Moody's actions victimized real people and their families, completely contrary to the Christian ideals she has always espoused. After her break with the People's Bureau of Investigation (PBI), she was able to see the fear she caused to her victims. With the insight she wishes she had earlier, she has vowed to return to what helped ease her anxiety in the past and what kept her grounded: her commitment to her family and her church.

And Mrs. Moody has had a lot of time to reflect on her actions, in over 10 months at the jail. While she knows she has no one to blame but herself, it has torn her apart to be away from her family. Before her arrest, she had never spent more than three nights away from her husband. Though she knows others in jail all are in

---

[2] Handwritten letters preceded by typewritten versions for the Court's convenience.

the same boat, the pain she felt missing Christmas and Mother's Day this last year was enormous. She has lost 35-40 pounds since she went into custody. The time away from her loved ones has more than convinced her never to do anything to cause her to be apart from them again.

Mrs. Moody wishes she could turn back time and take back all of the harm she caused the victims here. Her actions were completely out of character. As Mrs. Moody's uncle writes to the Court, "[s]he has been an outstanding citizen for 50 some years of her life." Ex. A at 3. Mrs. Moody wants the opportunity to show the Court that she is an outstanding citizen again.

### A. Procedural background

On September 2, 2022, the Government filed a Complaint, alleging that Mrs. Moody made interstate threatening communications under 18 U.S.C. § 875. She made her initial appearance on September 7, 2022, and was appointed undersigned counsel. Her family retained counsel, and on September 12, 2022, Mrs. Moody was ordered released. On October 4, 2022, she was charged by Bill of Indictment with fifty-eight counts of interstate threatening communications, as well as conspiracy to commit kidnapping under 18 U.S.C. § 875(c) & 1201(c). Mrs. Moody was scheduled for arraignment on October 14, 2022. She did not appear at her arraignment, and was arrested that same day.

On October 19, 2022, Mrs. Moody's retained attorney withdrew, and again, she was appointed undersigned counsel. On October 26, 2022, Mrs. Moody requested to represent herself; that request was denied. Again, Mrs. Moody requested to represent

7

herself; that motion was granted by the Court on December 12, 2022.[3] On December 14, 2022, the Government filed a superseding Indictment, adding five related counts, and two co-defendants. While representing herself, Mrs. Moody resolved her case with the Government, with a written plea agreement to one of the counts against her. She pled guilty on January 6, 2023.

At that time, Mrs. Moody again invoked her right to appointed counsel. Undersigned counsel has represented Mrs. Moody since then. Mrs. Moody's co-defendant Dever first appeared in this district on January 11, 2023. Co-defendant Dee Thomas Murphy never appeared in this district as he passed away, though he made his initial appearance from out-of-district on January 23, 2023.

### B. PSR and objections

The defense received the Draft Presentence Report on March 1, 2023, and submitted objections to it on March 15, 2023. A Final Presentence Report ("PSR") was filed on March 28, 2023, satisfactorily resolving all of Mrs. Moody's objections to the Report. However, Mrs. Moody is submitting this Sentencing Memorandum to seek downward variances based on her charitable service/good works, her mental and emotional condition, and her remorse.

**<u>As a preliminary matter, the starting point for Mrs. Moody's analysis is a Guideline Range of 24 to 30 months, based upon a total offense level of 17, and her criminal history category I.</u>** If Mrs. Moody prevails on her downward

---

[3] At that time, the undersigned became standby counsel for Mrs. Moody.

variance arguments, she contends that the appropriate Guideline Range, based upon a total offense level of 13, and her criminal history category of I, is 12 to 18 months. Mrs. Moody is asking this Court for a sentence of **time-served** (over 10 months) with a condition that at least 2 months of her term of supervised release to follow be served on home detention. USSG § 5C1.1(d)(2).

## II.

## LEGAL ARGUMENT

### A. A downward variance is warranted based on Mrs. Moody's charitable service/good works.

Mrs. Moody's involvement with her church began when she was a child, progressing from singing with the church choir, to making religious recordings, and playing the piano and organ for a number of churches as an adult. Essentially, she has provided lifelong service through her church, as well as to other religious institutions in her community. Most recently, she served as the pianist for her church for over 12 years, as well as the pianist for another community church.

As her friends and family tell the Court of Mrs. Moody:

- "She has used her talent of playing the piano for churches that didn't have a pianist and has played and sang at funerals for me when families didn't have anyone to perform this service." (Ex. A at 1),

- "Just this past year she played piano and she sang at a first cousin's funeral who passed [from] a heart attack." (Ex. A at 3),

- "When I wanted to learn a new song to sing at church, Darris would learn the music then she would send me a video and we would keep trying until we got the right key. She not only help (sic) me with music, she helped everyone. (Ex. A. at 7),

9

- "She has always been devoted to serving others with her musical abilities; singing for funerals, church revivals, weddings, and anywhere she could help, without ever accepted [sic] any monetary gifts." (Ex. A at 11),

- "[S]he would play the piano at different churches for revivals." (Ex. A at 15), and

- "We have sang (sic) together in our choir and also as musicians using instrumentation and singing as a duet and as a trio with other members. We have also worked together during funerals to provide music. Most of our interaction is during fellowship times at our church such as meals and revivals and in speaking afterwards." (Ex. A at 16).

Moreover, Ms. Moody has continued to provide service to others—to the extent possible—at the jail. She is part of a voluntary crew of detainees who clean the jail bathrooms, wash laundry, serve meals, and clean up after the meals are served. Additionally, she gathers with other detainees to sing religious songs, and she prays with others who are suffering and in search of the Gospel. Mrs. Moody is not one of those defendants who "found" religion in jail; religion has always been an integral part of her life. Based on all of this, she requests that this Court impose a downward variance to reflect her charitable service and good works. She also notes that her ties to her church community also will help to protect the public in the future. 18 U.S.C. § 3553(a)(2)(C).

**B. A downward variance is warranted based on Mrs. Moody's mental and emotional condition.**

The Presentence Report helps to detail Mrs. Moody's mental health background, which contributed to this offense. Additional analysis by psychiatrist Dr. Tabrizi helps to explain this further at Exhibit B. The expert details how Mrs.

10

Moody's mental and emotional conditions led to this offense, describing a "history of anxiety and mood symptoms," but also "some symptoms that are not explained well by anxiety and depression" [with which she has been diagnosed previously]. Ex. B at 5. This confluence of mental health issues made Mrs. Moody particularly vulnerable to the PBI in this case.

In addition to the mental health findings by the expert, she found several factors about Mrs. Moody that would help to protect the community in the future. In particular, the expert cited Mrs. Moody's strong work and volunteer history, her relationships both with her family and her community, her lack of addiction history, and the availability of the "coping skill" that Mrs. Moody has available in her music. *Id*. Thus, Mrs. Moody requests that this Court impose a downward variance to reflect her mental and emotional condition.

### C. A downward variance is warranted based on Mrs. Moody's remorse.

Mrs. Moody fully acknowledges that she made a terrible mistake by committing this offense. And while this is an explanation but not an excuse, she remained in the thrall of the PBI when she did not come to court for her arraignment. But she has transformed during this case. Mrs. Moody's remorse can be seen, in part, by the fact that she resolved her case with the Government while <u>representing herself</u>. Defense counsel has never witnessed that before, and believes it is a true testament to Mrs. Moody acknowledging and accepting responsibility for her terrible mistakes here. Counsel also sees it as one of Mrs. Moody's first steps toward making

11

things right. And the fact that Mrs. Moody <u>pled guilty</u> before any of the other co-defendants even made it to this district, only further illustrates how sorry she is for her actions.

Mrs. Moody apologizes for her offense every time she meets with counsel. While she played a lesser role than her co-defendants in this case—which the Government appears to recognize—she knows that is no excuse for her actions. Even if others provided the tools and directions for sending the writs, she is an educated adult and knows right from wrong. Mrs. Moody is deeply embarrassed that she was taken in by this group that harmed the community like the PBI did. While the PBI provided the blueprint for her actions, she did not try to stop them, and in fact, she was an integral part of the harm caused to her community.

Overall, this Court can impose the requested sentence on Mrs. Moody based on the above considerations or any other factor it finds. As the Supreme Court explained in *Rita v. United* States, 551 U.S. 338, 348 (2007), the law directs that the Sentencing Commission should (and does) allow judges to "'maintai[n] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices,' and to 'reflect, to the extent practicable, [sentencing-relevant] advancement in [the] knowledge of human behavior.'" This is an unusual case with an unusual defendant, warranting this lower sentence in Mrs. Moody's individual case. Many mitigating factors are present here, to warrant this lower sentence for Mrs. Moody, including her mental health challenges and major life changes she was undergoing during a

global pandemic. It was a perfect storm that caused drastic changes in the life of an otherwise law-abiding woman. While she was not then equipped to fully comprehend the issues with the PBI, the sad wisdom she has gained from this case will cause her to think much more critically about her actions in the future. In fact, she plans to avoid social media going forward, while again surrounding herself with family and her church.

Ultimately, Mrs. Moody has learned some very hard lessons from her conduct in this case, including going to jail for the first time in her life. And she knows the shame she has caused herself and her family is nothing compared to the anxiety and fear she caused in her victims. While she has not quite served one year in jail—for a person who only has gotten a traffic ticket—even this sentence is very serious. She asks the Court for the opportunity to return to her family as soon as possible, so she can demonstrate how she has transformed her thinking and her life.



## III.

## CONCLUSION

For the foregoing reasons, Darris Gibson Moody respectfully requests that the Court sentence her to time-served, with a condition that at least two months of her supervised release term to follow be served on home detention.

        Respectfully submitted:

        s/ Emily M. Jones
        Emily M. Jones
        N.C. Bar No. 35720
        Assistant Federal Public Defender
        Attorney for Darris Gibson Moody
        Federal Public Defender for the Western District of North Carolina
        1 Page Avenue, Suite 210
        Asheville, NC  28801
        Phone: (828) 232-9992
        Fax: (828) 232-5575
        emily_m_jones@fd.org

Date:  August 17, 2023